## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION


DENISE YOUNG,

                Plaintiff,

        v.                                    C-1-01-803

CHILDREN'S HOSPITAL
MEDICAL CENTER, et al.,

                Defendants.


### ORDER

    This matter is before the Court upon a motion for summary judgment filed by defendants Children's Hospital Medical Center (CHMC) and individual defendants Erin Riehle, Carolyn Palmer, Robert Pauly, Jerome Bauer and Dorine Seaquist (doc. 29), plaintiff's opposing memorandum (doc. 35), defendants' reply (doc. 37), and plaintiff's highlighted version of defendants' proposed findings of fact and conclusions of law (doc. 39).

### I. Procedural history

    Plaintiff filed the original complaint in this action on November 21, 2001 (doc. 1) and an amended complaint on May 13, 2002 (doc. 11). Plaintiff brings claims for violations of the Americans with Disabilities Act (ADA), 41 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 701, et seq. Plaintiff also brings state law claims for breach of contract and intentional and negligent infliction of emotional distress.

1

## II. Plaintiff's allegations

Plaintiff makes the following allegations in support of her claims: Plaintiff is an individual with a disability within the meaning of the ADA. She suffers from an autoimmune disease known as Lupus. Defendants were made aware of plaintiff's condition and its related side effects upon commencement of her employment with CHMC.

Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA. With the reasonable accommodation of working only one full-time schedule, plaintiff is able to perform the essential functions of her position. Plaintiff has made numerous requests for accommodation to allow her to function with her disability. CHMC has intentionally and maliciously refused plaintiff's requests. CHMC has also failed to undertake any good faith efforts, in consultation with plaintiff, to identify and to make reasonable accommodations for plaintiff.

Defendants Riehle, Seaquist and Palmer restricted plaintiff's receipt of overtime compensation and discriminated against her by singling her out from other employees and treating her in a malicious manner. One or more of these defendants have attempted to fire plaintiff, demote her to part-time status, or restrict her hours. Defendant Seaquist maliciously initiated sick days contrary to the Family Medical Leave Act. Defendants Pauley and Bauer restricted plaintiff by scheduling her for make-up days.

### III. Undisputed facts

1.  Plaintiff has been employed by CHMC as a Clinical Nurse in its Emergency Department (ED) since 1987.

2.  CHMC employs and pays plaintiff on a salary basis for full-time work (i.e., 40 hours per

week).

3.      Each day, nurses in the ED care for children from birth to age 18 who may need

treatment for anything from an earache to a life-threatening trauma.

4.      As a nurse in the ED, plaintiff daily performed a variety of functions. Plaintiff cared for

patients, lifted patients, took vital signs, did visual assessments of patients, completed

paperwork, walked back and forth between patients, interacted with patients, families and

co-workers, moved large heavy equipment such as beds and monitors, problem solved,

and made independent determinations.

5.      Plaintiff's job as an emergency room nurse at a pediatric hospital requires that she be

capable of regular and predictable attendance.

6.      The ED must maintain adequate staffing.

7.      There are a number of weeks when plaintiff does not work 40 hours.

8.      When plaintiff's illness is bad, she misses three or more days a month. When plaintiff is

healthy, she misses one or more days a month.

9.      CHMC has always allowed plaintiff to take off work when necessary because of illness.

10.     Due to the number of times plaintiff must call off work, plaintiff has, on occasion,

depleted her paid time-off (PTO) allowance and extended illness bank allowance, which

together amount to more than 300 hours of paid time-off.

11.    CHMC has allowed other employees to donate more than 300 hours of their PTO to

plaintiff.

12.    Plaintiff has never been forced to work when she was not feeling well.

13.    For years, staffing in the ED has been tight. When a nurse calls off work, CHMC tries to

fill the shift with supplemental staff or calls other nurses to come in during unscheduled

times so that adequate coverage can be provided for the patients.

14.    In 1996, CHMC's Patient Services, in an effort to improve nurse staffing, instituted a

weekend make-up policy to discourage nurses from calling off on the weekends. This

policy applied to nurses in the ED as well as other areas of CHMC.

15.    Under the make-up policy, a nurse who called off on a weekend shift would be asked to

make up that day on one of her scheduled days off.

16.    Erin Riehle, the former Director of the ED, created a form to provide to nurses who

missed a weekend, informing them that they had missed a weekend and providing them

with the opportunity to sign up for another weekend.

17.    When an employee missed a weekend, the employee was provided with one of these

forms by Jerome Bauer or Robert Pauly, managers in the ED who did the scheduling for

the department.

18.    If an employee did not sign up for a make-up weekend, Bauer or Pauly could place the

individual on the schedule for a make-up shift that best met CHMC's needs.

19.    In 1997, plaintiff met with Dorine Seaquist, the Senior Vice President of Patient Services,

and asked to be exempted from the weekend make-up policy.

20.    Plaintiff did not always make up the weekend time she missed.

4

21.    Plaintiff did not work makeup shifts even if she was placed on the schedule by a manager.

22.    In 1998, in a further effort to improve staffing, Joe Kroner, the Systems Coordinator Director in Patient Services, instructed Erin Riehle to make sure her employees were working their full-time equivalency (FTE) status.

23.    Plaintiff's status was 1.0 FTE and she was therefore required to be scheduled for and to work 80 hours per pay period.

24.    In 1998, plaintiff was regularly scheduled for only 76 hours per pay period and was expected to work an additional eight-hour shift every month to maintain her FTE status.

25.    In May 1998, as a result of Kroner's request, Riehle instructed one of her assistants to run a report on CHMC's time recording system. The system reported that plaintiff had more than 100 hours of time that was paid but not worked.

26.    Riehle reported this information to Joe Kroner and Dorine Seaquist. Riehle also shared this information with plaintiff.

27.    In July 1998, Riehle left the ED to become Director of Disability Services at CHMC.

28.    In January 1999, defendant Carolyn Palmer Jackson became the Director of the ED.

29.    In 1999, CHMC promoted plaintiff to Clinical Nurse III, the top of her field. Jackson had recommended plaintiff for the promotion.

30.    Plaintiff is currently an employee of CHMC. She has always received good evaluations and merit increases. She has never had any benefits taken away. Plaintiff has never lost a promotion for which she applied.

31.    Although reduced hours would be beneficial to plaintiff's health, plaintiff refused an

offer by CHMC to reduce her FTE status.

32.    CHMC's policies were issued at the direction of the hospital and could be changed by the hospital.

33.    Neither Jackson, Pauly, Bauer or Seaquist ever did anything to try to force plaintiff to resign.

34.    Plaintiff did not file a charge with the Equal Employment Opportunity Commission (EEOC) until after February 28, 2001.

## IV. Defendants' motion for summary judgment

Defendants move for summary judgment on all claims asserted by plaintiff. Defendants contend that plaintiff's ADA claim is time-barred. Defendants note that a plaintiff must file an EEOC charge on an ADA claim within 300 days of the alleged discriminatory acts. They argue that since plaintiff did not file a charge with the EEOC until after February 28, 2001, her ADA claim must be based on acts that occurred after May 4, 2000.

Defendants also contend that plaintiff's Rehabilitation Act claim is barred by the applicable two-year statute of limitations. Defendants note that plaintiff filed this action on November 21, 2001, so that her claim must be based on actions that occurred after November 21, 1999. Defendants assert that plaintiff's complaints all relate to events that occurred during Riehle's tenure as Director of the ED, which ended in July 1998, and that plaintiff has testified the situation improved after Jackson became Director in January 1999.

Defendants contend that plaintiff's claims must also fail because she cannot establish a prima facie case of disability. First, defendants argue that plaintiff is not disabled within the meaning of the ADA and the Rehabilitation Act. Second, defendants contend that plaintiff is not

qualified for her job because she is unable to fulfill the requirement of regular and predictable attendance. Third, defendants contend that plaintiff has not suffered an adverse employment action in that she has never been terminated, received a written warning, had any benefits taken away, lost a promotion, received an evaluation with a rating lower than "Achieves," or been subjected to severe and pervasive harassment because of a disability. Fourth, defendants contend that plaintiff is not entitled to an accommodation under the law because she has acknowledged that her disability does not affect her ability to perform her job. Defendants contend that CHMC has nonetheless accommodated plaintiff by allowing her to take time off whenever needed and not requiring her to make up weekends missed. Defendants note that plaintiff has not been disciplined for failing to make up lost weekend time. Defendants also contend that CHMC offered plaintiff an additional accommodation of reducing her FTE status, which plaintiff refused.

Defendants further argue that they are entitled to summary judgment on plaintiff's state law claims. They contend that plaintiff's breach of contract claim fails because no contract existed between the parties and plaintiff testified that she was not aware of any agreement or promises made by CHMC. Defendants also contend that plaintiff's claims of intentional and negligent infliction of emotional distress fail as a matter of law because defendants' conduct was not extreme and outrageous and plaintiff did not suffer extreme emotional distress.

Finally, defendants note that although plaintiff refers to the Family Medical Leave Act (FMLA) in her opposing memorandum, she has not brought a claim under the FMLA.

In response to defendants' motion, plaintiff argues that her action is not barred by the statute of limitations because defendants' alleged discriminatory actions have been ongoing.

Plaintiff alleges that she is an individual with a disability who suffers from debilitating ailments, including Lupus and Crohn's disease, of which CHMC has been aware at all relevant times; that she is qualified for her position; that she needs an accommodation in the form of not being forced to make up time lost on weekends; that defendants have taken an adverse employment action against plaintiff by subjecting her to stress through harassment about lost week-end time that she has not made up, which harassment increased when plaintiff indicated that requiring time lost on weekends to be made up was not the right thing to do, and by denying plaintiff pay when she made up weekend time lost and telling her she owed those hours to CHMC. Plaintiff asserts that defendants' actions have created a hostile work environment.

### V. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no

genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

## VI. Applicable law

## A. The ADA

The ADA prohibits an employer from discriminating against a "qualified individual with a disability" because of that individual's disability.  42 U.S.C. § 12112(a). If plaintiff seeks to establish her case indirectly without direct proof of discrimination, she may establish a prima facie case of discrimination by showing that: "1) [she] is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996). Plaintiff may also establish the fifth prong by showing that she was treated differently than similarly-situated non-disabled employees. See *Linser v. State of Ohio, Dept. of Mental Health,* 234 F.3d 1268 (6th Cir.)(TABLE), 2000 WL 1529809 *2 (unpublished decision)(citing *Monette,* 90 F.3d 1173). If the plaintiff establishes a prima facie case, the employer must then offer a legitimate reason for its action. *Monette,* 90 F.3d at 1186. If the employer does so, plaintiff must introduce evidence showing that the proffered reason is pretextual. *Id.*

An individual is considered "disabled" under the ADA if she:

(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) [has] a record of such impairment; or
(C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2). The regulations accompanying the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i)(2003). E.E.O.C. regulations

10

define "substantially limit[ed]" to mean "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." § 1630.2(j). In determining whether an individual is substantially limited in a major life activity, the factors which the regulations set forth for consideration are: "The nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact of or resulting from the impairment." §§ 1630.2(j)(2)(i)-(iii).

The Supreme Court has determined that the terms "substantially limits" and "major life activities" must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197 (2002). Any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the ADA. *Mahon v. Crowell,* 295 F.3d 585, 590-591 (6th Cir. 2002).

An individual's ability to work should be considered only if the individual is not substantially limited with respect to any other major life activity. *Hoskins v. Oakland County Sheriff's Dept.,* 227 F.3d 719, 726, n.2 (6th Cir. 2000)(citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492)(1999)(citing 29 C.F.R. pt. 1630, App. § 1630.2(j)). The term "substantially limits" with respect to an individual's ability to work is defined in the regulations as follows:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the

major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

A "qualified individual with a disability" means "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

The term "reasonable accommodation" may include - -

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

In order to establish a prima facie case, plaintiff must show a "materially adverse" change in the terms or conditions of employment. *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir. 1996).

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Company,* 188 F.3d 652, 662 (6th Cir. 1999)(quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir. 1993)).

Discriminatory harassment which is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment'" is

12

actionable under the anti-discrimination statutes. See *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). To establish a prima facie hostile environment case based on disability, plaintiff must establish that (1) she is disabled, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her disability, (4) the harassment had the effect of unreasonably interfering with her work performance by creating a hostile, offensive, or intimidating work environment, and (5) there is employer liability. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999); *Handshoe v. Mercy Medical Center,* 34 Fed. Appx. 441, 448, 2002 WL 649070 *7 (6th Cir.).

To satisfy the fourth prong, plaintiff must show that the conduct to which she was subjected was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that she subjectively regarded the conduct as abusive. *Smith v. Leggett Wire Co.,* 220 F.3d 752, 760 (6th Cir. 2000)(citing *Jackson v. Quanex Corp.,* 191 F.3d 647, 658-59 (6th Cir. 1999)). In determining whether a reasonable person would consider an environment hostile or abusive, a court must consider all of the circumstances, including the frequency and severity of the conduct and whether the conduct is threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Hafford,* 183 F.3d at 512.

### B. The Rehabilitation Act

The Rehabilitation Act provides that "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). A claim brought under the Rehabilitation Act may be analyzed in the same manner as a claim brought

under the ADA. ***Thompson v. Williamson County, Tennessee,*** 219 F.3d 555, 557 n. 3 (6th Cir. 2000)(citing ***Maddox v. University of Tennessee,*** 62 F.3d 843, 846 n.2 (6th Cir. 1995)).

## VII. Opinion

## A. Statute of Limitations

The parties agree that the statute of limitations in Ohio for a claim under the Rehabilitation Act is two years. See *James v. Upper Arlington City School Dist.,* 228 F.3d 764, 769 (6th Cir. 2000), *cert. denied,* 532 U.S. 995 (2001). Therefore, plaintiff's claims under the Act must be based on events that occurred on or after November 21, 1999. The parties also agree that a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory acts in order to bring a claim under the ADA, so that plaintiff's claim under the ADA must be premised on acts that occurred on or after May 4, 2000. See 42 U.S.C. § 12117 (incorporating into the ADA the procedures set forth in 42 U.S.C. § 2000e-5(e)).

Plaintiff argues that her discrimination claims are not time-barred because defendants' actions have been ongoing and continuous.  The Sixth Circuit has held that a continuing violation exists in two situations: (1) where the plaintiff suffers from "a series of discrete discriminatory acts that are anchored by at least one such act within the limitations period," or (2) "where there has occurred a 'longstanding and demonstrable . . .  over-arching policy of discrimination." *McFarland v. Henderson,* 307 F.3d 402, 406 (6th Cir. 2002).

Plaintiff has failed to produce evidence to show that defendants had a longstanding, over-arching policy of discrimination. Plaintiff has also failed to show that she was subjected to a discriminatory act within the limitations period for a Rehabilitation Act claim or the 300-day period for filing a charge under the ADA. Plaintiff alleges that as late as March 24, 2003, she had been granted vacation time and then called by defendants and asked why she was not at work. Plaintiff does not allege, however, that she was required to work those days or that

defendants took any action which could be construed as discriminatory in connection with that incident.

Plaintiff also alleges that while she has received no disciplinary action, "there is this oppressive reminder, 'You owe us this time.'" According to plaintiff's deposition testimony, however, although she is still told that she needs to make up weekend time, the last time she received a memo stating that she had to do so was May 19, 1999 (Depo., pp. 58-59). She testified that Assistant Director of Nursing Jenny Crabtree had verbally instructed her that she needed to make up weekend time within a year of November 26, 2002, but plaintiff did not make up the time. (Depo., pp. 59). Plaintiff also testified that she was unsure whether she had made up any weekend time since 1999 and that the last time she was actually required to make up weekend time lost due to illness was most likely in July of 1999. (Plaintiff's depo. pp. 32-33, 60). Plaintiff testified that there was a period of time when she was scheduled to work more than her normally scheduled hours because she was told that she owed time due to weekend absences, but she stated that had not happened since 1998 or possibly 1999. (Depo., pp. 56-57). Thus, plaintiff's own deposition testimony belies her claim that she has been subjected to continuing discriminatory actions, at least one of which occurred within the applicable limitations periods.

Because plaintiff has not shown that she was subjected to a discriminatory action within the period of limitations for filing an ADA charge or a Rehabilitation Act claim, and because the evidence she has produced does not establish a continuing violation under either Act, plaintiff's claims must be dismissed as untimely.

**B. Prima facie case**

Assuming plaintiff timely filed her claims under the ADA and the Rehabilitation Act,

defendants are nonetheless entitled to summary judgment because plaintiff has failed to come forward with sufficient evidence to establish a prima facie case of disability discrimination. First, to the extent plaintiff seeks to bring a hostile environment claim, that claim must fail because plaintiff has not shown that she was subjected to harassment that was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. Nor has plaintiff alleged facts which would permit a finding that the claimed harassment was based on a disability.

Second, plaintiff has failed to establish each of the elements of a prima facie case of disability discrimination based on an adverse employment action. Plaintiff asserts that she has a disability and is qualified for her job but claims that she has been denied the accommodation of not being forced to make up time lost on weekends. The record establishes that plaintiff is qualified to perform the job of Clinical Nurse III at CHMC with or without reasonable accommodation, so that the second prong of a prima facie case is satisfied. Plaintiff has not, however, come forward with any evidence which shows that she is disabled within the meaning of the ADA or the Rehabilitation Act so as to satisfy the first prong of her prima facie case. Although plaintiff has one or more physical impairments, she has not come forward with evidence which raises a genuine issue as to whether those impairments substantially limit one or more of her major life activities, including working. To the contrary, plaintiff contends that she has remained capable of performing her job despite defendants' alleged failure to accommodate her.

Plaintiff has likewise failed to come forward with sufficient evidence to establish the third prong of her prima facie case, i.e., that she suffered an adverse employment action. Plaintiff

17

concedes that she has received no disciplinary action at CHMC, that she has never been demoted or denied a promotion, and that she in fact has been promoted to the highest position in her field. Plaintiff argues that she has been denied benefits in that on more than one occasion when she made up time lost on a weekend, she was denied the additional 8-hours pay and was told that those were hours she owed CMHC. Plaintiff has not, however, alleged any specific facts to indicate when this occurred or to show that the denial of pay was unwarranted. Nor has plaintiff shown that this happened more than a handful of times so as to constitute a material loss of benefits.

Plaintiff argues that she has suffered an adverse action in the form of stress created by defendants. At her deposition, plaintiff identified the following sources of stress prior to Carolyn Jackson Palmer's becoming ED Director: addition of plaintiff to the schedule on her non-scheduled days, being told by supervisors that she needed to make up time, and a fear of not knowing when she was going to be on the schedule (Depo., p. 65). Plaintiff alleges that defendants have harassed her from 1996 until the present day by sending her memos informing her that she was required to make up week-end time lost when she was ill. She also alleges that as of March 24, 2003, she had applied for and been granted several days vacation only to find that she was scheduled to work those days. Plaintiff avers that when she attempted to contact hospital personnel to clarify the situation, no one returned her calls. Plaintiff does not indicate whether she was able to rectify the situation or whether she was required to work the scheduled days. Plaintiff alleges that the continued harassment by defendants (i.e., verbal or written directives, issued each time that she missed a day on the weekend, informing her that the time had to be made up) has an immediate and adverse impact on her in that defendants' actions

create stress and stress exacerbates her condition.

The actions about which plaintiff complains cannot reasonably be construed as constituting an adverse employment action. Plaintiff does not assert that the alleged harassment culminated in a tangible employment action. Nor are defendants' actions sufficiently severe and pervasive to constitute a hostile environment. In fact, plaintiff's own deposition testimony establishes that defendants' actions, and specifically the memos plaintiff received regarding lost weekend time, cannot reasonably be characterized as harassment of any type or degree. Plaintiff testified that the weekend make-up policy applied to everyone, although not everyone, including plaintiff, was always required to make up weekend time in accordance with the terms of the policy. (Depo., pp. 57-58). Plaintiff testified that individuals other than her were required to make up time (Depo., p. 170). She further testified that she did not always make up weekends when she was sent a memo and she was never issued warnings or disciplined in any way for not doing so, other than being told she needed to make up the weekend time or else she would be put on a schedule to make up that time. (Depo., pp. 33-36). Plaintiff testified that she had always been able to take time off if she needed to because she was sick. (Depo., p. 47). A reasonable trier-of-fact could not determine based on these allegations that defendants subjected plaintiff to harassment of any type or to harassment which a reasonable person would find hostile or abusive or of sufficient severity to constitute an adverse employment action.

Finally, plaintiff has failed to come forward with evidence which raises a genuine issue of material fact as to whether she was treated differently than other non-disabled individuals. Plaintiff testified at her deposition that she felt she had been treated differently than other employees in that she was put on the schedule on her off days in 1998 and Erin Riehle, while

serving as ED Director, had attempted to circulate false information about plaintiff's taking time off without deducting it from her sick time. (Depo., pp. 82-85). Plaintiff does not, however, attribute the dissimilar treatment directly to her alleged disability but instead claims that she was treated differently because she took a stand about the weekend make-up time. (Depo., p. 82). Thus, the alleged dissimilar treatment by Erin Riehle cannot support plaintiff's claim that she has been discriminated against because of her disability. Plaintiff's allegations regarding selective application of the weekend make-up policy likewise do not support a finding of discrimination. Plaintiff testified at her deposition that one individual with a chronic illness was told not to worry about making up weekend time, but plaintiff acknowledged that she herself had been told the same thing. (Depo., pp. 105-106). Plaintiff also testified that one other individual had not received any notices about making up weekend time, but plaintiff does not know if that individual was even absent on a weekend. (Depo., p. 106-108). Plaintiff's testimony therefore does not support a finding that the weekend make-up policy was applied to plaintiff and not to similarly-situated non-disabled individuals.

For these reasons, the Court finds that plaintiff has not come forward with sufficient evidence to establish a prima facie case and to create a genuine issue of fact with respect to her claims of disability discrimination. Defendants are therefore entitled to summary judgment on plaintiff's claims under the ADA and the Rehabilitation Act.

### C. FMLA

Plaintiff incorrectly states in her opposing memorandum that she brings this action under the FMLA. Plaintiff did not set forth a claim under the FMLA in the amended complaint. Accordingly, there is no need to address any possible application of the FMLA to the facts of

this case.

### D. State law claims

Plaintiff brings a claim for breach of contract. To prove a breach of contract under Ohio law, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. ***Doner v. Snapp,*** 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994). Plaintiff asserts that the parties have a contract that plaintiff will perform her duties to the satisfaction of CHMC. Plaintiff has not, however, established the existence of an express contract between her and CHMC. Plaintiff further claims that CHMC has breached an implied contract to provide compensation and a safe working environment, but she has not alleged any actions by defendant which could be construed as creating an implied contract. Thus, plaintiff's claim for breach of contract must fail.

Plaintiff also brings claims for negligent and intentional infliction of emotional distress, alleging that defendants have intentionally and negligently inflicted severe emotional distress upon her by engaging in an effort to force her to resign and harassing her. Plaintiff does not contest defendants' assertion that Ohio does not recognize the tort of negligent infliction of emotional distress in an employment setting. In any event, the facts do not support a finding that defendants negligently inflicted emotional distress on plaintiff. Ohio does recognize the tort of intentional infliction of emotional distress in an employment setting. The elements of this claim are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . . 3) that

the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" ***Pyle v. Pyle***, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983). Plaintiff's factual allegations do not satisfy any of the elements of a claim for intentional infliction of emotional distress. Defendants are therefore entitled to summary judgment on plaintiff's emotional distress claims.

**VIII. Conclusion**

Defendants' motion for summary judgment is **GRANTED**. This case is **DISMISSED** at plaintiff's cost and is **TERMINATED** on the docket of the Court.

**IT IS SO ORDERED.**


_____
            S/Herman J. Weber
            HERMAN J. WEBER
    SENIOR JUDGE, UNITED STATES DISTRICT COURT


J:\HJWA\01-803rehbdiscmsj

23